IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-1370-WJM

PAUL CANTU,

    Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

    Defendant.

---

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

---

This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Paul Cantu ("Cantu") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Cantu was not disabled within the meaning of the Social Security Act. This appeal followed.

For the reasons set forth below, the ALJ's decision denying Cantu's application for disability insurance benefits is VACATED and the case is REMANDED for further proceedings consistent with this Order.

## I. BACKGROUND

Cantu was born in 1966, and was 46 years old on the alleged disability onset date. (Admin. Record ("R.") (ECF No. 11) at 51.) Cantu completed high school and has previously worked as a construction worker, concrete layer, and electrician's

assistant. (R. at 46, 59, 165.)

Cantu filed an application for a period of disability and disability insurance benefits on February 21, 2013, alleging that he has been disabled since December 15, 2012 due to multiple impairments, including: bilateral heel fractures, depression, and back pain. (R. at 50.) Cantu's application was initially denied and he requested an administrative hearing in front of an ALJ, which was held on October 24, 2014. (R. at 36.) On November 7, 2014, the ALJ, Earl W. Shaffer, issued a written decision in accordance with the Commissioner's five-step sequential evaluation process. (R. at 7–19.)[1]

At step one, the ALJ found that Cantu had not engaged in substantial gainful activity since the alleged onset date. (R. at 12.)

At step two, the ALJ found that Cantu suffered from the following severe impairments: bilateral calcaneal fractures with osteopenia, chronic non-united scaphoid fracture with osteonecrosis of the proximal fracture of left wrist, mild multilevel disc desiccation, and degenerative changes of the lumbar spine. (*Id.* 12.)

At step three, the ALJ found that Cantu's impairments, while severe, did not meet or medically equal any of the listed impairments listed in the Social Security regulations. (R. at 13.)

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Before proceeding to step four, the ALJ assessed Cantu's residual functional capacity ("RFC"). The ALJ concluded that Cantu has the RFC to "perform sedentary work[,]" with the following restrictions:

> [E]xcept the claimant can lift and carry up to 20 pounds occasionally with his left hand with assistance from him right arm but only 10 pounds occasionally and five pounds frequently with his right arm. He can stand or walk for two hours out of an eight hour workday with the ability to alternate between sitting and standing as needed. He can sit for six hours out of an eight hour workday with the ability to change postures every 45 minutes to an hour during the course of a day. He can push and pull with his lower extremity and right upper extremity at the exertional level of light. He cannot climb ladders, ropes or scaffolds but can occasionally climb stairs and ramps. He cannot balance or crawl but stooping, kneeling, crouching is occasional. He should avoid concentrated exposure to temperature extremes, unprotected heights, vibrations, hazards, and major manufacturing machinery. He can occasionally handle and finger with left upper extremity.

(R. at 14.)

Next, at step four, the ALJ concluded that Cantu "is unable to perform any past relevant work." (R. at 17.) Thus, the ALJ proceeded to step five and found that there was work Cantu could perform in the national and regional economy, specifically, the semi-skilled jobs of telephone sales (SVP–3), order clerk (SVP–4), and information clerk (SVP–4). (R. at 18.)[2]

---

[2] Specific Vocational Preparation ("SVP") is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles ("DOT"), App.C.II., 1991 WL 688702 (4th ed. 1991). The DOT lists an SVP time for each described occupation. *See* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). "Unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT." *Id*. Thus, the jobs identified by the ALJ are qualified as semi-skilled. (R. at 18.)

Accordingly, the ALJ found that Cantu was not entitled to disability insurance benefits. (R. at 19.) Cantu appealed to the Social Security Appeals Council, which denied review. (R. at 1–3.) Cantu then timely filed this action seeking review of the ALJ's November 7, 2014 decision. (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

On appeal, Cantu makes three arguments as to why the ALJ's decision should be reversed: (1) he "does not possess the skills needed to perform the jobs relied on by the ALJ at step five"; (2) "[t]he ALJ's hypothetical question to the vocational expert differs from his RFC finding"; and (3) "[t]he ALJ did not explain why his RFC finding

deviated from the restrictions in the medical opinions to which the ALJ assigned weight." (ECF No. 14 at 7, 14, 16.)

As to his first argument, Cantu contends that the ALJ erred in finding that Cantu "is capable of performing semi-skilled jobs despite the fact that he has no skills to apply to sedentary semi-skilled jobs." (*Id.* at 8.) Cantu points out that the vocational expert ("VE"), Bruce Magnuson, testified at the administrative hearing that Cantu has no skills to transfer to sedentary work, such that he has the same vocational profile as an "unskilled worker." (*Id.* at 9 citing 20 C.F.R. § 404.1565(a) ("If you have acquired skills through your past work, we consider you to have these work skills unless you cannot use them in other skilled or semi-skilled work that you can now do. If you cannot use your skills in other skilled or semi-skilled work, we will consider your background the same as unskilled.").)

Here, the ALJ found that Cantu's severe impairments prevented him from returning to past relevant work and that his impairments prevented him from performing the full range of sedentary work. (R. at 14, 17.) Thus, the ALJ was required to identify particular jobs Cantu could perform with the specified non-exertional limitations. *Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992); *see also Campbell v. Bowen*, 822 F.2d 1518 n.2 (10th Cir. 1987) ("Where nonexertional impairments are also present, the grids[3] alone cannot be used to determine the claimant's ability to perform alternative work."); *Allen*, 357 F.3d at 1143 (10th Cir. 2004) (holding that the presence of a material limitation beyond those encompassed within a given RFC precludes summary

---

[3] The "Medical Vocational Guidelines" are commonly known as the "Grids." *See Allen v. Barnhart*, 357 F.3d 1140, 1143 (10th Cir. 2004).

invocation of a grid rule to dispose of a disability claim).[4] The ALJ sought to obtain such proof from the VE. However, "[h]ad the VE identified any unskilled jobs [Cantu] could perform, the ALJ could readily have concluded [Cantu] was not disabled on this basis. But the VE identified only semi-skilled jobs, so it was for the ALJ to determined whether [Cantu] could in fact perform such jobs, *i.e.*, whether he had any skills transferrable to these jobs." *Rice v. Colvin*, 2013 WL 1286186, at *2 (E.D. Okla. March 26, 2013).

"An ALJ can find a claimant's acquired skills are transferable to other jobs 'when the skilled or semi-skilled work activities the claimant did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.'" *Dikeman v. Halter*, 245 F.3d 1182, 1185 (10th Cir. 2001) (quoting 20 C.F.R. § 404.1568(d)(1)). Further, the Commissioner bears the burden of proving that the claimant has such transferable skills. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). Thus, "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the" ALJ's written decision. SSR 82-41, 1982 WL 31389, at *7 (Jan. 1, 1982).

Here, the VE did not express any opinion on the skills required for the three

---

[4] The Commissioner defines nonexertional impairments as "medically determinable impairments, such as skin impairments, epilepsy, and impairments of vision, hearing, or other senses, postural and manipulative limitations." 20 C.F.R. 404.1545(d). As noted above, it appears that the ALJ found both postural and manipulative nonexertional limitations. (*See* R. at 14.)

semi-skilled jobs or Cantu's ability to derive the necessary skills from his previous work. (*See generally* R. at 45–49.) Instead, as Cantu correctly points out, the VE testified that the "skills that he had in past relevant work [do not] transfer into sedentary work." (R. at 48.) The omission of such testimony regarding available transferable skills left the ALJ without any evidence of the skills required for the semi-skilled jobs and Cantu's ability to perform those jobs. Moreover, the ALJ expressly declined to address the issue of transferable skills in his written decision, stating that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled." (R. at 18.) However, as noted above, an ALJ cannot rely solely on the grids to find a claimant disabled. *See Trimiar*, 966 F.2d at 1333.

Thus, the Court finds that the ALJ had a duty to assess skills from Cantu's past relevant work which would allow performance of the semi-skilled jobs identified at step five. It only makes sense that in order for an ALJ to consider semi-skilled positions at step five, an ALJ must first find that a claimant has transferable skills that will enable him or her to perform more than unskilled work. *See Steward v. Barnhard*, 44 F. App'x 151, 152 (9th Cir. 2002) ("[A]n applicant must possess transferable skills from previous work in order to perform SVP–3 jobs."); *also Macarages v. Astrue*, 2010 WL 3749468, at *2–3 (W.D. Okla. Aug. 23, 2010) (recommending remand based on ALJ's conclusion that the claimant could perform semi-skilled positions without finding that the claimant possessed transferable skills that would qualify him for a semi-skilled position); *Phair v. Colvin*, 2013 WL 6185243, at *3 (W.D. Wash. Nov. 26, 2013) (concluding that without a

7

finding on the transferability of skills, the court was unable to determine "whether or not the ALJ properly found plaintiff could perform [semi-skilled] jobs given his acquired work skills, and thus whether or not the ALJ's step five determination is supported by substantial evidence in the record:); *Teeter v. Comm'r of Soc. Sec.*, 2012 WL 6772099, at *4 (N.D. Ohio Dec. 12, 2012) (holding that "before [the claimant] could be found not disabled on the basis of a capacity to perform specified semi-skilled jobs, he needed to first be found to possess transferable skills such as would permit him to perform the identified work").

Here, there was no evidence for this assessment, as nonexertional impairments prevented reliance on the grids and the VE did not identify any transferable skills or any unskilled jobs open to Cantu. Nevertheless, the ALJ concluded that Cantu could perform the three semi-skilled jobs without any substantial evidence or findings on identifiable skills or their utility for the identified positions. *See* SSR 82-41, 1982 WL 31389, at *7 (Jan. 1, 1982).

Accordingly, the Court concludes that the ALJ failed at step five to point to and discuss evidence in the record which demonstrates that other work exists in significant numbers in the national economy that Cantu can do, given his RFC, age, education, and work experience, and that this error requires remand to the ALJ. *See* 20 C.F.R. §§ 404.1512(g) and 404.1560(c).

The Court expresses no opinion as to the remainder of Cantu's arguments, and neither party should take the Court's silence as tacit approval or disapproval of how the

evidence was considered.[5] Further, the Court does not intend by this opinion to suggest the results that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for rehearing.

Dated this 26th day of April, 2017.

BY THE COURT:

William J. Martinez
United States District Judge

---

[5] However, the Court notes that Cantu has conceded his second argument, stating that he agrees with Defendant that "the error is harmless because only sedentary jobs were identified." (ECF No. 16 at 9.) As a consequence on remand the ALJ would be justified in considering this argument as confessed.